FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 23, 2020

SEAN F. McAVOY, CLERK

1

2

3

4

5

6

7

8

9

10

11

12

13

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAMES H.,<br><br>            Plaintiff,<br><br>    v.<br><br>ANDREW M. SAUL,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>            Defendant. | NO:  1:19-CV-03204-FVS<br><br>ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND DENYING<br>PLAINTIFF'S MOTION FOR<br>SUMMARY JUDGMENT |

14

15

16

17

18

19

20

21

        BEFORE THE COURT are the parties' cross motions for summary

judgment.  ECF Nos. 10 and 11.  This matter was submitted for consideration

without oral argument.  The Plaintiff is represented by Attorney D. James Tree.

The Defendant is represented by Special Assistant United States Attorney Jeffrey

E. Staples.  The Court has reviewed the administrative record, the parties'

completed briefing, and is fully informed.  For the reasons discussed below, the

Court **GRANTS** Defendant's Motion for Summary Judgment, ECF No. 11, and

**DENIES** Plaintiff's Motion for Summary Judgment, ECF No. 10.

ORDER ~ 1

## JURISDICTION

Plaintiff James H.[1] filed for supplemental security income and disability insurance benefits on July 7, 2015, alleging an onset date of July 1, 2013. Tr. 276-91. Benefits were denied initially, Tr. 151-66, and upon reconsideration, Tr. 169-81. A hearing before an administrative law judge ("ALJ") was conducted on February 21, 2018, and a subsequent hearing was held on August 10, 2018. Tr. 38-104. Plaintiff was represented by counsel and testified at both hearings. *Id*. The ALJ denied benefits, Tr. 12-37, and the Appeals Council denied review. Tr. 1. The matter is now before this court pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 55 years old at the time of the first hearing, and 56 years old at the time of the second hearing. Tr. 44-45. He graduated from high school, and has no additional education or training. Tr. 47. He lives with his brother and his family. Tr. 46. Plaintiff has work history as a nurse assistant, cook, tow truck operator, camp attendant, forklift operator, and industrial cleaner. Tr. 47-50,

---

[1] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

ORDER ~ 2

64-66.  He testified that he cannot work because of his hernia and back pain.  Tr. 53.

Plaintiff testified that he has "electric jolts of pain" in his lower back and left leg, and the pain gets worse when he lifts, walks, or stands.  Tr. 53.  He reported that he hurt himself lifting a gallon of milk.  Tr. 53-54.  Plaintiff testified that his hernia limits his ability to stand, walk and lift; he has "pressure and sharp" pain from the hernia; he has right shoulder and right knee pain; he has tinnitus; he has migraines and cluster headaches; and he has depression.  Tr. 54-57.  He reported that he lays down a couple of hours a day in an eight-hour day, and he the most he could lift is 1 pound for 2 hours out of an eight-hour day, Tr. 59.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching

for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner.  "The court will uphold the ALJ's

conclusion when the evidence is susceptible to more than one rational

interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.

2008).  Further, a district court will not reverse an ALJ's decision on account of an

error that is harmless.  *Id*.  An error is harmless where it is "inconsequential to the

[ALJ's] ultimate nondisability determination."  *Id*. (quotation and citation omitted).

The party appealing the ALJ's decision generally bears the burden of establishing

that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within

the meaning of the Social Security Act.  First, the claimant must be "unable to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the claimant's

impairment must be "of such severity that he is not only unable to do his previous

work[,] but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy."

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the

claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date. Tr. 18. At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the cervical and lumbar spine; mild degenerative joint disease of the right knee; tinnitus; obesity; status post right shoulder injury with residuals; headaches; depression; and a hernia. Tr. 18. At step three, the ALJ found that since the alleged onset date of disability, July 1, 2013, Plaintiff has not had an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 19. The ALJ then found that since July 1, 2013, Plaintiff has the RFC

to perform modified light work as defined in 20 CFR 404.1567(b) and 416.967(b).  The claimant could lift/carry 10 pounds frequently and 20 pounds occasionally; stand and walk 6 hours in an 8 hour work day; sit up to 8 hours in an 8 hour work day; would need to alternate sitting and standing such that he could sit for an hour then would need to stand for 5 minutes; or stand for an hour then would need to sit for 5 minutes and could alternate these positions without the need to leave the work stations; occasional climbing of ramps and stairs; no climbing of ladders, ropes, scaffolds; occasional balance, stoop, kneel, crouch, and crawl; occasional overhead reaching with the right upper extremity; avoid exposure to excessive vibration; should work in an environment with only moderate noise level; avoid exposures to hazards such as unprotected heights and dangerous machinery; and is able to remember, understand and carry out tasks or instructions that can be learned by demonstration or within a period of 30 days consistent with occupations of SVP 1 or 2.

Tr. 21.  At step four, the ALJ found that since July 1, 2013, Plaintiff has been unable to perform any past relevant work.  Tr. 28.  Next, the ALJ noted that on July 30, 2017, Plaintiff's age category changed to an individual of advanced age.  Tr. 29.  "Prior to July 30, 2017, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is 'not disabled' whether or not [Plaintiff] has transferable job skills.  [However, b]eginning on July 30, 2017, [Plaintiff] has not been able to transfer job skills to other occupations."  Tr. 29.

At step five, the ALJ found that prior to July 30, 2017, considering Plaintiff's age, education, work experience, and RFC, there were other jobs that existed in significant numbers in the national economy that Plaintiff could have performed, including: office helper, photocopy machine operator, and mail room clerk.  Tr. 29-30.  However, beginning on July 30, 2017, the date Plaintiff's age

category changed, considering Plaintiff's age, education, work experience, and RFC, there are no jobs that exist in significant numbers in the national economy that Plaintiff could perform.  On that basis, the ALJ concluded that Plaintiff was not disabled prior to July 30, 2017, but became disabled on that date and has continued to be disabled through the date of this decision; and Plaintiff "was not under a disability within the meaning of the Social Security Act at any time through December 31, 2014, the date last insured."  Tr. 30.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II of the Social Security Act and supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 10.  Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly considered Plaintiff's symptom claims;

2. Whether the ALJ properly considered the medical opinion evidence; and

3. Whether the ALJ erred at step five.

## DISCUSSION

### A. Plaintiff's Symptom Claims

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."

*Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.").  "The clear and convincing [evidence] standard is the most demanding required in Social Security cases."  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the

1    "testimony and statements of [Plaintiff] concerning the severity of [his]

2    impairments are not given full weight" for several reasons.  Tr. 22.

3                    *1. Lack of Objective Medical Evidence*

4            First, the ALJ found that Plaintiff's testimony concerning the severity of his

5    impairments was inconsistent with the overall medical record, including (1) "mild

6    to moderate findings on imaging reports, physical examination results showing

7    mostly no strength, sensory or reflex deficits and no significant gait abnormalities,"

8    and (2) unremarkable mental status examinations.  Tr. 22.  An ALJ may not

9    discredit a claimant's pain testimony and deny benefits solely because the degree

10   of pain alleged is not supported by objective medical evidence.  *Rollins v.*

11   *Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341,

12   346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601.  However, the medical evidence is a

13   relevant factor in determining the severity of a claimant's pain and its disabling

14   effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2).

15           Here, the ALJ set out the medical evidence contradicting Plaintiff's claims

16   of disabling limitations.  For example, as to his claimed physical impairments, the

17   ALJ noted that imaging of Plaintiff's lumbar and cervical spine across the relevant

18   adjudicatory period showed no herniations or significant stenosis, and included

19   findings of mild posterior disc space narrowing at L4-5, mild to moderate spurring

20   and anterior endplate spurring at C4-5 and C6-7, and no spondylosis or abnormal

21   alignment.  Tr. 22-23 (citing Tr. 423-24, 462).  The ALJ also noted that imaging of

Plaintiff's knee and shoulder "demonstrated similarly moderate findings." Tr. 22-23, 422 (imaging results showed mild right knee joint degeneration and no acute abnormality), Tr. 461 ("mild to moderate" medial greater than lateral tibiofemoral joint space narrowing).  Finally, the ALJ noted that Plaintiff's "neuromuscular examinations have indicated some muscle spine tenderness and limited range of motion; however, there have been no significant neurological motor strength, sensory or reflex deficits, findings of severely unstable gait or inability to ambulate that would preclude [Plaintiff] from working." Tr. 23.  In support of this finding, the ALJ cited limited flexion and extension in Plaintiff's back but full range of motion in his upper extremities in November 2013; no pain on palpation and full range of motion in spine and upper extremities in May 2015; tenderness and reduced range of motion in June 2016, but was described as doing well with no complaints of pain one month later; and left lumbar spasm and tenderness in the spine in March 2017, but fairly full range of motion one month later.  Tr. 23-24, 420, 438, 538-40, 588, 592, 604.

Further, as to his claimed mental limitations, the ALJ noted that "mental status examinations throughout the record are largely unremarkable, and [Plaintiff] reported improved symptomology with medication and psychotherapeutic treatment." Tr. 25.  In support of this finding, the ALJ cited mental status examinations findings that Plaintiff was cooperative with good eye contact; memory, fund of knowledge, and concentration were all within normal limits; his

comprehension was normal and his vocabulary was average; his IQ was

"congruent with educational level"; motivation and persistence were in normal

range; and he could complete simple math calculations in his head.  Tr. 25-26

(citing Tr. 432-33, 482-83, 521-22, 690, 912-13).

Plaintiff generally argues, without specific citation to the record, that the

ALJ improperly discredited Plaintiff based on lack of objective evidence because

"his treating providers consistently assessed disabling limitations due to his

physical impairments, and these reports were supported by contemporary evidence

and the rest of the record."  ECF No. 10 at 16.  However, regardless of evidence

that could be considered favorable to Plaintiff, it was reasonable for the ALJ to

find the severity of Plaintiff's mental and physical symptom claims was

inconsistent with benign objective and clinical findings across the longitudinal

record.  Tr. 22-25.  "[W]here evidence is susceptible to more than one rational

interpretation, it is the [Commissioner's] conclusion that must be upheld."  *Burch*,

400 F.3d at 679.  The lack of corroboration of Plaintiff's claimed limitations by the

objective medical evidence was a clear, convincing, and unchallenged reason for

the ALJ to discount Plaintiff's symptom claims.

### 2.  Improvement

Second, the ALJ found Plaintiff's symptom claims were not given full

weight based on "improvements in musculoskeletal pain with Ibuprofen and recent

treatment notes showing [Plaintiff's] headaches were improved, . . . and some

symptomatic improvements noted [as to Plaintiff's claimed mental health impairments] with medication and psychotherapy." Tr. 22.  A favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (Conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits).

Plaintiff argues that (1) he was given "medications like Vicodin and Flexeril" on one occasion when he went to the emergency room for back pain in May 2016, and (2) there is no inconsistency regarding Plaintiff's headaches because he acknowledged at the hearing that he "he had not had a cluster migraine for a while," and his headaches had improved with medication.  ECF No. 10 at 16-18 (citing Tr. 56, 850).  However, the ALJ cited multiple reports by Plaintiff during the relevant time period that he was only taking Ibuprofen for pain, and was "uninterested" in taking anything for neuropathic pain; thus, it was reasonable for the ALJ to consider improvement in Plaintiff's claimed impairment of migraine headaches.  Tr. 23, 55-56 (testifying that he still "has headaches" and had a "spell" of headaches three months prior to the hearing), 456, 472, 549. Moreover, the Court's review of the record included multiple report of improvement in Plaintiff's physical symptoms, as well as treatment notes indicating that Plaintiff's claimed mental health symptoms improved with increased medication and counseling.  *See*,

e.g., Tr. 23-24, 540, 549, 581, 604, 624, 639, 644, 706, 712.

Based on the foregoing, it was reasonable for the ALJ to conclude that consistent evidence of improvement in Plaintiff's claimed physical and mental impairments was inconsistent with his allegations of incapacitating physical and mental limitations. *See Burch*, 400 F.3d at 679 (where evidence is susceptible to more than one interpretation, the ALJ's conclusion must be upheld). This was a clear and convincing reason to discredit Plaintiff's symptom claims.

### 3. Failure to Seek and Comply with Treatment

Third, the ALJ noted that Plaintiff "rejected referrals to orthopedics and a recommendation for hearing aids"; "has not been entirely complaint with recommended physical therapy"; and did not commence treatment for mental health symptoms until May 2017. Tr. 23-25. Unexplained, or inadequately explained, failure to seek or comply with treatment may be the basis for rejecting Plaintiff's symptom claims unless there is a showing of a good reason for the failure. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). Here, in support of this finding, the ALJ cited Plaintiff's consistent lack of interest in medication for neuropathic pain, refusal of orthopedic consultation, reluctance or refusal to continue with physical therapy, failure to do his home exercise program, and refusal of hearing aids. Tr. 23-25 (citing Tr. 559, 472, 475, 488, 628, 637). Moreover, the ALJ noted that Plaintiff commenced treatment for depression and

anxiety in May 2017, but reported that "the onset of his depression was ten years ago after he was fired from his job and his mother died." [2] Tr. 25, 428, 688.

Plaintiff generally argues that the ALJ erred in discrediting Plaintiff for failing to seek and comply with treatment "by failing to consider [Plaintiff's] severe depression as a barrier to treatment due to his low motivation and apathy." ECF No. 10 at 18.  Pursuant to Social Security Ruling 16-3p, an ALJ "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."  Social Security Ruling ("SSR") 16-3p at *8-*9 (March 16, 2016), *available at* 2016 WL 1119029.  However, in this case, the only evidence cited by Plaintiff in support of this argument is Plaintiff's own statements to mental health providers that he "had a problem caring for himself" and "[n]ow that I feel good enough I can start

---

[2] The ALJ also noted that Plaintiff was never psychiatrically hospitalized during the relevant period or placed in inpatient or intensive outpatient treatment."  Tr. 25. The Court is unable to discern any evidence in the record indicating that Plaintiff failed to comply with a treating provider's recommendation for this type of treatment.  However, to the extent the ALJ erred in making this finding, any error is harmless because, as discussed in detail above, the ALJ's ultimate rejection of Plaintiff's symptom claims was supported by substantial evidence. *See Carmickle*, 533 F.3d at 1162-63.

ORDER ~ 16

working on other things." ECF No. 10 at 17 (citing Tr. 712, 950). Plaintiff fails to cite, nor does the Court discern, evidence from a treating source that Plaintiff failed to seek or comply with treatment due to his depression.

Thus, regardless of evidence in the record that could be considered favorable to Plaintiff, it was reasonable for the ALJ to conclude that Plaintiff's failure to seek and comply with physical and mental health treatment was inconsistent with the alleged severity of his complaints. *See Burch*, 400 F.3d at 679 (where evidence is susceptible to more than one interpretation, the ALJ's conclusion must be upheld). This was a clear and convincing reason for the ALJ to discredit Plaintiff's symptom claims

The Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims.

## B. Medical Opinions

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* If a treating or examining physician's opinion is

uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray,* 554 F.3d at 1228 (quotation and citation omitted).

The opinion of an acceptable medical source such as a physician or psychologist is generally given more weight than that of an "other source." *See* SSR 06-03p (Aug. 9, 2006), *available at* 2006 WL 2329939 at *2; 20 C.F.R. § 416.927(a). "Other sources" include nurse practitioners, physician assistants, therapists, teachers, social workers, and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d). The ALJ need only provide "germane reasons" for disregarding an "other source" opinion. *Molina*, 674 F.3d at 1111. However, the ALJ is required to "consider observations by nonmedical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987).

Plaintiff argues the ALJ erroneously considered the opinions of treating nurse practitioner Rebecca Nelson, ARNP; treating nurse practitioner Angela

Thomas, ARNP; examining psychologist Pamela Miller, Ph.D.; and treating

therapist Debbie Miller, LMFT.  ECF No. 10 at 3-15.

1. *Rebecca Nelson, ARNP*

Ms. Nelson completed evaluations of Plaintiff in November 2013, March

2017, and February 2018.  In November 2013, Ms. Nelson noted that Plaintiff

would experience moderate to marked imitations in basic work activities due to

lower back pain, upper extremity paresthesias, abdominal hernia, and right knee

degenerative joint disease.  Tr. 416.  She opined that Plaintiff was limited to

sedentary work, "although she noted such limitation was expected to last only six

months." Tr. 26, 417.  Then, in March 2017, Ms. Nelson found that Plaintiff

would experience moderate to marked limitations in basic work activities due to

lower extremity radiculopathy, limited shoulder range of motion, and "possible"

cognitive deficits.  Tr. 534.  She opined that Plaintiff was severely limited, which

is defined as unable to meet the demands of sedentary work, "and estimated such

limitations would be in effect for nine months." Tr. 26, 535.  The ALJ jointly

considered these opinions, an gave them little weight for several reasons.  Tr. 26.

First, the ALJ noted that the limitations opined by Ms. Nelson in 2013 and

2017 "do not meet the durational requirements for a disability." Tr. 26.  To be

found disabled, a claimant must be unable to engage in any substantial gainful

activity due to an impairment which "can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A); *see also Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012).  Here, because Ms. Nelson opined that Plaintiff's limitations would persist for six and nine months, respectively, with available medical treatment, the duration requirement for a finding of disability is not met.  Tr. 417, 535.  Plaintiff argues this was not a legitimate reason to reject these opinions because (1) Ms. Nelson's assessments of disabling limitations were "consistent" in the 2013 and 2017 opinions, (2) an opinion by a different treating provider dated "between" Ms. Nelson two opinions limited Plaintiff to sedentary exertions for 12 months, and (3) the diagnoses of lumbar impairment, knee degenerative disc disease, and hernia in Ms. Nelson's 2013 opinion were determined to be severe impairments by the ALJ at step two.  ECF No. 10 at 7.

However, as noted by Defendant, despite Plaintiff's contention that "other evidence showed that his limitations were more longstanding," Ms. Nelson's opinions specifically found that Plaintiff's limitations "would persist for six and nine months, respectively.  Plaintiff's alternative interpretation of the evidence provides no basis for reversal."  ECF No. 11 at 5 (citing Tr. 417, 535).  Here, Ms. Nelson specifically opined that Plaintiff's impairment was not expected to last for a "continuous period of not less than 12 months," thus, the durational requirement was not met.  This was a specific and legitimate reason for the ALJ to reject Ms. Nelson's 2013 and 2017 opinions.

Second, the ALJ found the limitations opined by Ms. Nelson in 2013 and

2017 "do not accord with mild to moderate findings on imaging reports, physical examination results showing mostly no strength, sensory or reflex deficits and no significant gait abnormalities, [and] improvements in musculoskeletal pain with Ibuprofen." Tr. 26, 420, 422-24, 438, 461-62, 536-40, 588, 592, 604, 902. An ALJ may discount an opinion that is conclusory, brief, and unsupported by the record as a whole, or by objective medical findings. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Plaintiff argues "the record does not support the ALJ's conclusion" and, in support of this argument, he cites the same mild to moderate imaging of Plaintiff's lumbar and cervical spine already considered by the ALJ; a single positive straight leg test; a single notation of slow and antalgic gait; and findings of reduced strength and limited range of motion in Plaintiff's back and shoulders. ECF No. 10 at 10 (citing Tr. 418-20, 536-37, 540, 594, 623, 631, 849, 883, 902, 1134). However, as discussed in detail above, and regardless of evidence that could be considered more favorable to Plaintiff, the longitudinal record includes consistently mild to moderate imaging results and benign physical examination findings. Thus, it was reasonable for the ALJ to find the severity of the limitations assessed by Ms. Nelson in 2013 and 2017 were inconsistent with the clinical and objective findings throughout the record.

Third, the ALJ found Ms. Nelson's 2013 and 2017 opinions "do not accord" with "recent treatment notes showing [Plaintiff's] headaches were improved," and Plaintiff's failure to follow through with physical therapy, accept an orthopedic

referral, or wear hearing aids.  Tr. 26.  Plaintiff argues that (1) Ms. Nelson "made no assessment of limitations due to headaches, [] so this is not a legitimate reason to discount her opinion"; and (2) to the extent the ALJ considered Plaintiff's failure to seek or comply with treatment, the ALJ "failed to explain what any of this has to do with the treating source's medical assessment of physical limitations."  ECF No. 10 at 7-9.  The Court agrees.  However, any error is harmless because, as discussed above, the ALJ's ultimate rejection of Ms. Nelson's 2013 and 2017 opinions was supported by substantial evidence.  *See Carmickle*, 533 F.3d at 1162-63.  For all of these reasons, the Court finds the ALJ properly considered Ms. Nelson's 2013 and 2017 opinions.

Finally, in February 2018, Ms. Nelson opined that Plaintiff must lie down ½ an hour to 2 hours at a time, 0-3 times a day; it is more probable than not that he would miss 4 or more days per month if he attempted to work a 40-hour per week schedule; and Plaintiff is severely limited, which is defined as unable to meet the demands of full time sedentary work.  Tr. 907-09.  Ms. Nelson opined that Plaintiff's limitations have existed since at least January 2009, but she listed the "first and last dates of treatment" as March 2017 through February 2018.  Tr. 907, 909.  The ALJ gave Ms. Nelson's 2018 opinion little weight for several reasons.

First, the ALJ found Ms. Nelson's 2018 opinion "was prepared after [Plaintiff's] established onset date, and thus does not reflect [Plaintiff's] functioning during the relevant period.  Additionally, Ms. Nelson postulates that

the limitations she assesses were in effect as far back as January 2009,

although she did not commence treating [Plaintiff] until 2017." Tr. 31.  Plaintiff

argues this is an "inadequate" reason to give Ms. Nelson's 2018 opinion little

weight because she opined the limitations "had existed throughout the relevant

period"; and Plaintiff noted that while Ms. Nelson had "personally resumed

primary care [of Plaintiff] in March 2017, she and her clinic had a long history of

treatment with [Plaintiff]" going back to at last 2013.  ECF No. 10 at 11-12 (citing

Tr. 420).  Defendant argues that in her 2018 opinion Ms. Nelson specifically

identified the "first and last dates of treatment" as March 2017 to February 2018,

"[a]nd Ms. Nelson did not identify any evidence from before that time as a basis

for her opinion.  On this record, the ALJ could reasonably find that Ms. Nelson's

opinion was unsupported."  ECF No. 11 at 7.

In general, a statement of disability made outside the relevant time period

may be disregarded.  *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th

Cir. 2010).  Here, Ms. Nelson's February 2018 opinion is dated after the

established onset date of July 30, 2017, at which point Plaintiff's age category

changed to an individual of advanced age.  Tr. 29, 909.  However, while it was

reasonable for the ALJ to note that Ms. Nelson's 2018 opinion was offered well

after the period for which Plaintiff is attempting to establish disability, an opinion

cannot be disregarded solely on this basis.  *Smith v. Bowen*, 849 F.2d 1222, 1225

(9th Cir. 1988) (reports containing observations made after the period of disability

are relevant to assess disability and should not be disregarded solely on that

basis).  Moreover, as noted by Plaintiff, the ALJ failed to resolve the apparent

discrepancy between Ms. Nelson's notation in her 2018 opinion that she began

treating Plaintiff in 2017, and evidence in the record that she treated Plaintiff in

2013.  *See Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995) (the ALJ is

responsible for "resolving conflicts in medical testimony, and for resolving

ambiguities.").

However, any error is harmless because the ALJ offered additional reasons,

supported by substantial evidence, for rejecting Ms. Nelson's 2018 opinion.  *See*

*Carmickle*, 533 F.3d at 1162-63.  Here, the ALJ rejected Ms. Nelson's 2018

opinion for the same reasons she discounted Ms. Nelson's November 2013

opinion, namely, inconsistency between the severity of her opined limitations, and

(1) mild to moderate findings on imaging reports, (2) physical examination results

showing mostly no strength, sensory or reflex deficits and no significant gait

abnormalities, and (3) improvements in musculoskeletal pain with Ibuprofen.  As

above, the ALJ properly discounted Ms. Miller's 2018 opinion because the severity

of her opinion did not accord with consistently mild objective and clinical findings.

*See Batson*, 359 F.3d at 1195; Tr 26, 420, 422-24, 438, 461-62, 536-40, 588, 592,

604, 902.

2.  *Angela Thomas, ARNP*

In May 2015, Ms. Thomas noted that Plaintiff would experience mild to

moderate imitations in basic work activities due to back pain, neck pain, shoulder pain, bowel problems, and tinnitus. Tr. 435. She opined that Plaintiff was limited to sedentary work, and that his current limitations would persist for 12 months with available medical treatment. Tr. 436. The ALJ gave Ms. Thomas's opinion little weight because her

> assessment does not comport with mild to moderate findings on imaging reports, physical examination results showing mostly no strength, sensory, or reflex deficits and no significant gait abnormalities, improvements in musculoskeletal pain with Ibuprofen and recent treatment notes showing [Plaintiff's] headaches were improved. They also do not comport with [Plaintiff's] failure to follow through with physical therapy, to accept an orthopedic referral or to wear hearing aids, suggesting that perhaps his symptoms are not as debilitating as alleged.

Tr. 27. Plaintiff generally argues that ALJ erred by failing to provide specific and legitimate reasons to reject Ms. Thomas's "consistent and cosigned report finding disabling limitations." ECF No. 10 at 12-13. As initial matter, as above, it is unclear to the Court how evidence of Plaintiff's improved headaches, and his failure to follow through with treatment, supports a finding that Ms. Thomas' opinion, in particular, should be given less weight. However, the Court finds this error is harmless because, as discussed below, the ALJ's ultimate rejection of Ms. Thomas' opinion was supported by substantial evidence. *See Carmickle*, 533 F.3d at 1162-63.

An ALJ may discount an opinion that is conclusory, brief, and unsupported by the record as a whole, or by objective medical findings. *Batson*, 359 F.3d at 1195; *see also Orn*, 495 F.3d at 631 (the consistency of a medical opinion with the

ORDER ~ 25

record as a whole is a relevant factor in evaluating that medical opinion).  Here, the

ALJ found Ms. Thomas' opinion "does not comport with" mild to moderate

findings on imaging reports; physical examination results showing mostly no

strength, sensory or reflex deficits and no significant gait abnormalities; and

improvements in musculoskeletal pain with Ibuprofen.  Tr 27, 420, 422-24, 438,

461-62, 536-40, 588, 592, 604, 902.  Moreover, the Court's review of the record

revealed that the benign "physical examination results" included Ms. Thomas' own

findings at the time of her opinion that Plaintiff had full range of motion of his

back, upper extremities, and lower extremities; no pain on palpation of his spine;

no edema, dislocation, or deformities; equal and adequate reflexes in all

extremities; intact sensation; and "gait and movement appear to be accomplished

with ease and symmetry."  Tr. 438; *See Tommasetti*, 533 F.3d at 1041 (ALJ may

reject a medical opinion if it is inconsistent with the provider's own treatment

notes).  Based on the foregoing, and regardless of evidence in the overall record

that could be considered more favorable to Plaintiff, the Court finds it was

reasonable for the ALJ to discount Ms. Thomas' opinion as inconsistent with

clinical and objective findings throughout the record, including Ms. Thomas' own

contemporaneous clinical findings.  *See Burch*, 400 F.3d at 679.

### 3.  Pamela Miller, Ph.D.

In April 2018, Dr. Miller completed a "comprehensive psychodiagnostics

exam" of Plaintiff, and opined that he had moderate limitation in his ability to

understand and remember complex instructions, carry out complex instructions, and make judgments on complex work-related decisions. Tr. 914. Dr. Miller specifically noted that when Plaintiff "is experiencing a great deal of pain, he has difficulty focusing and remembering [information]"; he has low frustration tolerance when in pain; pain interfered with his ability to concentrate and persist with tasks; and Plaintiff "needed to take frequent rest breaks." Tr. 914. However, Dr. Miller opined that Plaintiff had no limitations in his ability to interact with the public, understand and remember simple instructions, carry out simple instructions, and make judgments on simple work-related decisions; and mild limitation on his ability to interact with supervisors, interact appropriately with co-workers, and respond appropriately to usual work situations and changes in a routine work setting. Tr. 914-15. The ALJ gave Dr. Miller's opinion great weight.

Plaintiff argues the ALJ improperly "ignored the relevant portions of [Dr. Miller's] opinion consistent with disability," including "difficulty" focusing and remembering information when he is in pain, and needing "frequent" rest breaks. ECF No. 12 at 1. However, the Court's review of Dr. Miller's opinion indicates that she listed Plaintiff's "difficulties" with accepting feedback and concentrating, and his "need to take frequent rest breaks" as "factors that support her assessment," which, as noted by Defendant, consisted of mild limitations on social interaction, no limitation on Plaintiff's ability to understand and carry out simple instructions,

and moderate limitations on Plaintiff's ability to understand and carry out complex instructions.  Tr. 914-15.  Moreover, as noted by the ALJ earlier in the decision, the mental status examination of Plaintiff conducted by Dr. Miller as part of her evaluation found no obvious pain behavior, adequate interpersonal skills, normal range of affect and congruent mood, normal memory, normal speech quality and production, normal thought process, normal concentration and attention, and judgement and insight within normal range.  Tr. 912-13.

As noted by Defendant, the ALJ "is responsible for translating and incorporating credited medical opinions into a succinct [RFC]."  ECF No. 11 at 8 (citing *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). Here, the RFC limited Plaintiff to simple tasks that "can be learned by demonstration or within a period of 30 days consistent with occupations of SVP 1 or 2," and limited Plaintiff to light work with the ability to alternate positions throughout the workday.  Tr. 21.  Plaintiff fails to identify specific limitations opined by Dr. Miller, as opposed to Plaintiff's self-reported limitations that were considered by Dr. Miller in support of her assessment, that were not properly accounted for in the assessed RFC.  *See Stubbs–Danielson v. Astrue,* 539 F.3d 1169, 1174 (9th Cir. 2008) (an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence or pace where the assessment is consistent with restrictions identified in medical testimony); *Molina*, 674 F.3d at 1111 (an error is harmless "where it is inconsequential to the [ALJ's] ultimate

nondisability determination").  Thus, the Court finds the ALJ did not err in

considering Dr. Miller's opinion, and incorporated the properly supported

limitations into the assessed RFC.

### 4.  Debbie Miller, LMFT

In June 2017, Ms. Miller opined that Plaintiff had severe limitations in his

ability to maintain attention and concentration for extended periods, complete a

normal work day and work week without interruptions from psychologically based

symptoms and perform at a consistent pace without an unreasonable number and

length of rest periods, accept instructions and respond appropriately to criticism

from supervisors, and travel in unfamiliar places or use public transportation.  Tr.

903-04.  She further opined that Plaintiff had marked limitations in his ability to

remember locations and work-like procedures, understand and remember detailed

instructions, carry out detailed instructions, make simple work-related decisions,

and respond appropriately to changes in the work setting.  Tr. 903-04.  In addition,

Ms. Miller opined that Plaintiff would likely be off-task over 30% of a 40-hour

workweek schedule, and would likely miss four or more days per month if

attempting to work a 40-hour workweek schedule.  Tr. 905. As noted by the ALJ,

"[o]verall, [Ms. Miller opined that Plaintiff] had marked limitations in his ability to

interact with others and extreme limitations in concentration, persistence or pace."

Tr. 905.

The ALJ gave little weight to Ms. Miller's opinion because it is not

consistent with (1) Plaintiff's routine and conservative psychiatric treatment, (2) unremarkable mental status examinations, and (3) symptomatic improvements noted with medication and psychotherapy.  Tr. 27.  Plaintiff argues (1) he "never indicated he had an impairment [that required inpatient treatment or hospitalizations], so there is no inconsistency"; (2) the record includes mental status results that Plaintiff was apathetic, tearful, depressed, anxious, and with delayed memory and cognitive functioning; and (3) "although he may have improved somewhat, the ALJ failed to show it was to a degree that contradicted Ms. Miller's 2017 assessment of limitations."  ECF No. 10 at 14-15.  However, an ALJ may discount an opinion that is conclusory, brief, and unsupported by the record as a whole, or by objective medical findings.  *Batson*, 359 F.3d at 1195.  As noted by the ALJ, Plaintiff did not commence mental health treatment until May 2017, and he reported improvement in mental health symptoms after an increased dose of medication and weekly counseling.  Tr. 25-26, 644, 706, 712.  Moreover, the longitudinal record includes consistently normal mental status examination findings, including cooperative with good eye contact, normal memory, normal fund of knowledge, normal attention and concentration, normal motivation and persistence, normal comprehension, average vocabulary, IQ congruent with educational level, and he could complete simple math calculations in his head.  Tr. 25-26 (citing Tr. 432-33, 482-83, 521-22, 690, 912-13).

Thus, despite evidence that could be considered favorable to Plaintiff, it was

reasonable for the ALJ to find the severe and marked limitations assessed by Ms. Miller were inconsistent with the overall longitudinal record, including normal mental status examination findings and improvement with routine treatment. These were germane reasons for the ALJ to discount Ms. Miller's opinion.

## C. Step Five

At step five of the sequential evaluation analysis, the burden shifts to the Commissioner to prove that, based on the claimant's residual functional capacity, age, education, and past work experience, he or she can do other work. *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. §§ 416.920(g), 416.960(c). The Commissioner may carry this burden by "eliciting the testimony of a vocational expert in response to a hypothetical that sets out all the limitations and restrictions of the claimant." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The vocational expert may testify as to: (1) what jobs the claimant, given his or her residual functional capacity, would be able to do; and (2) the availability of such jobs in the national economy. *Tackett*, 180 F.3d at 1101. If the claimant can perform jobs which exists in significant numbers either in the region where the claimant lives or in the national economy, the claimant is not disabled. 42 U.S.C. §§ 423(d)(2)(a), 1382c(a)(3)(b). The burden of establishing that there exists other work in "significant numbers" lies with the Commissioner. *Tackett*, 180 F.3d at 1099.

Here, the vocational expert testified that a hypothetical individual of Plaintiff's age, education, work experience, and residual functional capacity could perform the requirements of representative jobs such as office helper (30,000 jobs in the national economy), photocopy machine operator (30,000 jobs in the national economy), and mail room clerk (20,000 jobs in the national economy).  Tr. 30. Plaintiff argues that the vocational expert's job estimates were "unreliable," and cites "Job Browser Pro" to challenge the job data contained in the vocational expert's testimony.  ECF No. 10 at 19-20.  However, a vocational expert's "recognized expertise provides the necessary foundation for his or her testimony." *Bayliss*, 427 F.3d at 1217-18.  Moreover, courts have consistently rejected such lay assessment of the raw vocational data derived from Job Browser Pro, and have found that such evidence does not undermine the reliability of a vocational expert's opinion.  *See, e.g., Sarah Amanda E. v. Saul*, No. 1:18-CV-03173-FVS, 2019 WL 7817086, at *9 (E.D. Wash. Sept. 30, 2019) (noting cases that rejected arguments that Job Browser Pro data undermined vocational expert's testimony); *Ruth Kay A. v. Comm'r of Soc. Sec.*, No. 1:18-CV-3240-TOR, 2019 WL 7817084, at *7 (E.D. Wash. Sept. 3, 2019) (offer of data derived from Job Browser Pro does not undermine the vocational expert's testimony); *Colbert v. Berryhill*, 2018 WL 1187549, at *5 (C.D. Cal. Mar. 7, 2018) (concluding the ALJ properly relied on vocational expert testimony regarding job numbers where claimant argued that the expert's numbers were inflated based on Job Browser Pro estimates; noting that Job Browser Pro is not a source listed in 20 C.F.R. §§ 404.1566(d), 416.966(d), and the

data therefrom served only to show that evidence can be interpreted in different ways); *Cardone v. Colvin*, 2014 WL 1516537, at *5 (C.D. Cal. Apr. 14, 2014) ("[P]laintiff's lay assessment of raw vocational data derived from Job Browser Pro does not undermine the reliability of the [vocational expert's] opinion.").

Here, the ALJ met her burden by establishing employment "exists in significant numbers in the national economy." 20 C.F.R. §§ 416.960(c)(2); *Beltran*, 700 F.3d at 389. Therefore, the Court will not disturb the ALJ's step five determination..

## CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence. 42 U.S.C. § 405(g). As discussed in detail above, the ALJ provided clear and convincing reasons to discount Plaintiff's symptom claims, properly considered the medical opinion evidence, and did not err at step five. After review the court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 10, is **DENIED**.

2. Defendant's Motion for Summary Judgment, ECF No. 11, is **GRANTED**.

1    The District Court Executive is hereby directed to enter this Order and

2 provide copies to counsel, enter judgment in favor of the Defendant, and **CLOSE**

3 the file.

4    **DATED** September 23, 2020.

5

6                                  _s/Fred Van Sickle_

7                                   Fred Van Sickle
                           Senior United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

ORDER ~ 34